TUFTS & *a. v.* HAYES & *a.*

The condition of a bond was, that the obligors should save the plaintiffs harmless from an attachment upon a farm which they had purchased of one of the obligors, and should pay the demand secured by the attachment, or fully and forever discharge the attachment. *Held*, that the condition was not broken, if the plaintiff in the action did not in fact commence a legal levy of his debt upon the land, within thirty days after the rendition of his judgment.

If an equity of redemption be attached, and before judgment the mortgage be paid, a formal sale of the equity of redemption, on execution, is a nullity, and passes nothing.

DEBT, on a bond dated March 5, 1852, with the following condition:

" The condition of this obligation is such that if the said Hayes shall save the said Tufts and Foss harmless from an attachment on the farm or parcel of land, with the buildings thereon, situate in said Farmington, now occupied by said Tufts, and purchased by said Tufts and Foss of said John S. Hayes, which said attachment was made on a writ in favor of George M. Herring of Farmington aforesaid, and shall well and truly pay the demand on which said writ of attachment is founded, or fully and forever discharge said attachment, so that said Tufts nor said Foss shall ever suffer any loss, costs or expense, by reason of said attachment,

then this obligation is void, otherwise in full force and effect."

On the trial, it appeared that the attachment referred to in said condition, was a general attachment of the premises mentioned, as the property of said Hayes. The premises at the time said attachment was made, January 4, 1851, were subject to a then existing mortgage from said Hayes.

The action against Hayes, in which the attachment was made, was founded on his promissory note, and was continued from term to term, till January term, 1853, when judgment was rendered against Hayes, February 26, 1853, by default. Execution was thereupon issued, and the officer, within thirty days after the judgment rendered, proceeded to levy the same on the premises attached on the writ, and completed the levy by sale at public auction of said Hayes' interest therein, as an equity of redemption, May 4, 1853.

But it further appeared that before the rendition of said judgment and issue of execution against said Hayes, he had paid and discharged said mortgage on the premises, so that there was, therefore, no equity of redemption to sell. It did not appear whether the creditor or officer had any knowledge of this fact or not.

The plaintiffs contended that by the condition of the bond, the defendants were bound to remove the attachment in a reasonable time, and that the dissolution of it by the failure to make a proper levy on the execution, (if the levy before mentioned was not legal,) was not within a reasonable time, and so the plaintiffs were entitled to maintain this action, without further proof of damages. But the court ruled otherwise.

The plaintiffs offered evidence to prove that after the sale on the execution, they paid the amount for which the equity of redemption was sold, to redeem the premises, and contended that they were entitled to maintain this action on that account. But the court ruled that the levy, by a sale

of an equity of redemption, as before stated, was, under the circumstances, a nullity, and, therefore, there having been no legal levy, any amount paid by the plaintiffs to redeem therefrom, gave them no claim against the defendants, under this bond; and that the attachment, for want of a legal levy of the execution, became dissolved.

Whereupon, a verdict was taken, by consent, for the defendants, subject to the opinion of this court.

*John H. Wiggins*, with whom were *Wheeler & Peavey*, for the plaintiffs.

1. Hayes, when he paid and discharged the mortgage on the premises, the right to redeem which had been attached, gave no notice to the creditor, the officer, nor to the plaintiffs. The mortgage was not discharged upon the records, the place where it should have been discharged, in order to give effectual notice to the creditor and officer how to proceed. So far as this debt against Hayes was concerned, to secure which the right to redeem had been attached on the writ, without notice, and without a discharge of the mortgage upon the record, there was an equity of redemption to sell, to which Hayes ought not to be allowed, under the circumstances, to object, and he ought not to be permitted to set up his own neglect and fault to defeat the right of the attaching creditor, and involve in hazard and difficulty the title and estate which he undertook to convey to the plaintiffs.

2. Although the levy may not have been legal, yet, in fact, a levy was made, and a sale took place, under which the purchaser set up rights adverse to those of the plaintiffs, and in consequence of these proceedings, the plaintiffs necessarily incurred some expense and costs, besides the payment to the creditor, which would have been avoided if the defendants had performed the condition of the bond. And we submit that, under all the circumstances, it is not necessary that a strictly legal levy was made, since, in fact, the

plaintiffs have suffered injury from the defendants' default and wrong.

3. No time was mentioned in the condition of the bond, within which it was to be performed, and we contend that the law infers that the undertaking was to perform the condition within a reasonable time. *Atwood* v. *Cobb*, 16 Pick. 231; *Sawyer* v. *Hammond*, 3 Shepley 40; *Howe* v. *Huntington*, 3 Shepley 350; *Phillips* v. *Morrison*, 3 Bibb 105; *Roberts* v. *Beatty*, 2 Penn. Rep. 63.

What is a reasonable time within which a contract is to be performed, when the contract is silent on the subject, is a question of law. *Atwood* v. *Clark*, 2 Greenl. Rep. 249; *Hill* v. *Hobart*, 4 Shepley 164; *Morse* v. *Bellows*, 7 N. H. Rep. 549.

And it is to be determined by a view of all the circumstances of the case. *Crocker* v. *Franklin Hemp and Flax Manf. Co.*, 3 Sumner 530.

In the case at bar, the attachment was made January 4, 1851, the sale in March, 1852, the action was continued in court from term to term, till January term, 1853, and then defaulted. During all this time, the plaintiffs' title was encumbered by the attachment, and to that extent, during all that time, they were disturbed in its possession and enjoyment. In consequence of the defendants' neglect in these particulars, the plaintiffs have suffered damage to the extent and amount paid for the equity of redemption which was sold, and in equity and good conscience ought to recover.

*G. Marston*, with whom was *Sanborn*, for the defendants.

The condition of the defendants' bond was that Hayes should save the plaintiffs harmless, by discharging the lien upon the land, created by the attachment, either by paying the debt, or in any other way. The parties did not say, and did not mean, that Hayes should pay what was demanded of him, at all events, or that he should remove the attachment in any particular time or manner.

The sole object of the bond was to furnish indemnity to the plaintiffs, in case the lien created by the attachment was perfected by a valid sale or levy.

Judgment was rendered against Hayes, February 26, 1853, and thirty days thereafter the attachment was dissolved, and the land freed from the incumbrance.

It was so because the sale which the officer attempted to make was a void proceeding. It was void, because there was no equity of redemption to sell, the mortgage having been paid and discharged long before said judgment was recovered.

The sale of an equity of redemption gives a title from the time the sale is made, and not from the time the attachment is made. *Goodall* v. *Rowell,* 15 N. H. Rep. 472.

It is said the mortgage was not discharged upon the record. The case does not so find, and there was no evidence on that point, nor is it at all material whether it was so discharged or not. The statute points out the mode of ascertaining what, if any thing, is due upon a mortgage. That fact can easily be ascertained. Comp. Laws, ch. 195, § 9.

The case finds that Hayes paid and discharged the mortgage, before the rendition of the judgment, and that is the only material point in the case. It is further said that the plaintiffs paid the amount for which the equity was sold by the officer. If they did so, it does not concern the defendants. . The plaintiffs acquired no right by such payment. It was a mere voluntary act on their part, and whether they made such payment unadvisedly, or for the purpose of acquiring a right of action on this bond, is immaterial. They might as well have parted with their money in any other way, and then have claimed to recover the same amount in an action on this bond.

It is also said the attachment was not dissolved in a reasonable time. Not so, because it was removed as soon as practicable, in the ordinary course of legal proceedings.

Tufts *v.* Hayes.

Hayes made no defence to the action against him, as the case finds; he did nothing to prolong the proceedings, and he had no power to remove the detachment sooner, without the concurrence of the plaintiffs in that action. True, Hayes might have tendered to Herring the amount he supposed was due him, but he could not have compelled Herring to have accepted it, and dismissed the action; and all this the parties to the bond all well knew when the bond was executed.

WOODS, C. J. The question in this case is as to the construction of the bond in suit. What are its true meaning and import, and what obligation did the defendants take upon themselves, by entering into it? What was its object, and what was it designed to accomplish?

The plaintiffs had purchased a farm of Hayes, one of the defendants, which was, at the time of the purchase, subject to a mortgage to some one, and to an attachment at the suit of Herring. The plaintiffs, then, had an interest in obtaining a discharge of the mortgage, as well as of the lien upon the land created by the attachment.

The condition of the bond was, that the defendants should save the plaintiffs " harmless from the attachment," and should well and truly pay the demand on which the writ of attachment was founded, or fully and forever discharge said attachment, so that neither said Tufts nor said Foss " should ever suffer any loss, costs or expense by reason of said attachment."

Now, it is not pretended that the plaintiffs have ever been evicted or turned out of the premises, nor is there any fair pretence that any one, by reason of the attachment, has acquired any interest therein as against the plaintiffs. The attachment was a general attachment of the premises, which gave a perfect lien upon the estate, and a right in the creditor to levy his execution upon it, according to the state of the title as it should be found to be, with reference to prior

claimants. In this case, the only encumbrance existing, when the lien was created by the attachment, was the mortgage; and when the mortgager discharged that, he discharged it in favor of the party having the first right next after it, which party, in this case, was Herring. By the redemption, then, which Hayes had a right to make, and did make, in fact, Herring's lien was enlarged, and became coextensive with the whole estate. After the payment and discharge of the mortgage, Hayes had no longer an equity of redemption, but a fee simple, covered by the attachment of Herring, and upon which Herring might have properly levied his execution, as the estate of Hayes, as against any rights acquired by these plaintiffs from the deed of Hayes. And such, and no other, was the estate which Herring had a right to extend his execution upon, either as against Hayes or the plaintiffs. Hayes had no equity of redemption. The levy, then, and the attempted sale of the equity of redemption, upon the execution, passed nothing in the estate, and the attachment becoming dissolved by the lapse of thirty days after the rendition of the judgment, the estate became absolute in the plaintiffs, discharged as well from the attachment as from the mortgage.

The result was thus attained which was contemplated in the bond; that is to say, the attachment therein described became " forever discharged," so that neither of the plaintiffs needed, afterwards, to have suffered " any loss, costs or expense by reason of the attachment," and a perfect and unencumbered title became vested in them. And this result was accomplished by the act of Hayes, the obligor, in discharging the mortgage, and the omission of Herring to make an effectual levy.

It was no part of Hayes' duty to give such notice to Herring as would aid him in enforcing his lien; nor is it necessary for him to show that he stood ready to pay off the encumbrance, if the proceedings of Herring had been such

as to render such an act requisite for the protection of the plaintiffs.

Nevertheless, it is contended that the plaintiffs are entitled to have some damages, by reason of the alleged failure of the defendants to remove the attachment within a reasonable time.

The obligation of the defendants was either to pay the demand on which the writ was founded, " or fully and forever discharge said attachment, so that the plaintiffs should suffer no loss, &c., by reason of it." The alternative form of the obligation is plainly intended to give an option to the obligors, of at least all the ordinary means by which attachments are dissolved, · and to allow the time reasonably necessary for the use of such means.

As one of these means obviously is to defeat the action in which the attachment is made, a reasonable time would, of course, extend to the day of rendering the judgment; and as nothing appears to show that the result of the action in that case was not doubtful, it would seem not unreasonble to allow till the commencement of a legal levy, which must have been within thirty days, for the party to prepare for his new position, especially as nothing could possibly have been done before that time to disturb the plaintiffs in their possession, for, after all, there was no certainty, till the actual beginning of the levy, that the judgment creditor would conclude to enforce his lien. In this view, the attachment must be holden to have been dissolved within a reasonable time; that is, a time contemplated by the parties.

But, considering that the only fair object of the parties was indemnity, and that any performance which proved seasonable for that object, was all that could be required, it is too plain for question that the performance was within a reasonable time. The plaintiffs have not been disturbed, damnified, or in danger of being damnified, by any omission or tardiness of the defendant obligors.

To allow a recovery of damages, in a case like this, in

Tufts *v*. Hayes.

which indemnity was the only object properly in view, and the only object embraced in the obligation, and where that object has been fully and conclusively attained, whether by the act of the obligor, or by failure of the contingency upon which his action was required, it is immaterial, and that, too, without reasonable apprehension of danger to the obligees, from any negligence or delay of the obligors, would be making a use of the contract which neither party could fairly have contemplated, and which would do manifest injustice to the defendants. It seems to be a case in which the defendants might have pleaded *non damnificatus*, and required the plaintiffs, in their replication, to show special damage. 1 Saund. 117; 2 Wils. 126.

From what has already been determined, it is apparent that the payment of any money by the plaintiffs, to redeem from the levy of Herring, was wholly unnecessary, and voluntary on their part. The levy was wholly void, and at the time of the payment, thirty days had elapsed since the rendition of the judgment, and the attachment, of course, was dissolved.

There is no ground upon which the plaintiffs are entitled to recover in this case; and the rulings of the court were entirely correct. There must, therefore, be

*Judgment on the verdict.*